Justice EISMANN,
concurring.
I concur in the majority opinion, but write to further explain the district court’s actions. The jury instruction used by the district court in this case was apparently based upon the unique set of facts presented.
While searching Defendant’s car, an officer found a small plastic baggie that contained an orange powder. When confronted, Defendant initially stated that the orange powder was Smarties candy, but then admitted it was Suboxone, which he was using to come down from an opiate dependency. He stated that he had purchased Suboxone pills from a friend.
The forensic scientist who tested the contents of the baggie testified that she first took a small portion of the residue in the baggie and placed it in a preliminary test reagent, which turned purple indicating the presence of opiates. She testified that Suboxone contains buprenorphine, which is an opiate, and naloxone, which is not a controlled substance. She then took another sample of the orange residue and analyzed it using a gas chromatograph mass spectrometer (GCMS), but there was not enough of the sample to produce an accurate result. She then obtained a sample by rinsing the baggie with methanol and ran that sample through the GCMS. This test revealed the presence of both buprenorphine and oxycodone.
Defendant testified that about a year earlier he had been prescribed Vicodin for his teeth. He liked the feeling and continued using it after the pain went away. He ultimately decided to quit using the Vicodin, but had adverse physical symptoms when he did so. He talked to a friend about his situation, and the friend provided some Suboxone. He testified that the baggie seized by the police was the same baggie in which he had received the Suboxone and that he did not know that there was any oxycodone in it.
There was no evidence that one could visually detect that the baggie residue consisted of two substances mixed together. The small amount of residue was one color — 'orange. The officer who discovered the baggie testified that the residue in the baggie looked like Suboxone and he had no reason to believe it was anything other than Suboxone.
The other officer who participated in the search testified that if someone was taking *594 Suboxone and an opiate, the Suboxone would cancel out the effect of the opiate. When asked whether it would be completely stupid to mix Suboxone and an opiate to try and get high, he answered, “I would agree you wouldn’t use them typically together.” The forensic scientist testified that oxycodone is an opiate, but she did not opine as to the quantity of oxycodone necessary in order to be detected by the GCMS.
The crime of possession of a controlled substance “requires ‘the knowledge that one is in possession of the substance,’ and either knowledge of the identity of the substance (e.g., in this case that it was methadone) or knowledge that the substance was a controlled substance.” State v. Neal, 155 Idaho 484, 487, 314 P.3d 166, 169 (2013) (emphasis added). The district court’s concern was that the standard instruction would be interpreted as instructing the jury that if Defendant was knowingly in possession of a controlled substance (Suboxone), he would be guilty of possessing any other controlled substance that happened to be mixed in with the Suboxone, even if he did not know, and could not know, that there was some other controlled substance mixed in with the Suboxone, particularly where possession of Suboxone is a misdemeanor and possession of oxycodone is a felony. The Court stated:
And the particular language at issue is that the fifth — I think the fifth element is that the State is required to prove that the defendant either knew that the substance in this case was oxycodone or believed it was a controlled substance. And the inartful use of the word is what is causing a problem here. The State’s interpretation of that is that that means any substance; the defense’s interpretation means the substance that we’re talking about in this case, and I think that is a critical issue here.
With the district court’s altered jury instruction, the jury still found Defendant guilty of possession of oxycodone. The district court’s instruction was based upon the unique facts of this case, and there is no indication that the court intends to give the same instruction in all future cases involving the possession of a controlled substance.
Justice BURDICK joins in this special concurrence.